# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO.: 3:22-cv-00582

**EDWARD ROGER GEBHART,**

    **Plaintiffs,**

v.

**CIGNA HEALTH AND LIFE INSURANCE COMPANY,**

    **Defendants.**

**COMPLAINT**

Plaintiff Roger Gebhart, complaining of Defendant Cigna Behavioral Health, Inc., alleges and says as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff E. Roger Gebhart ("Mr. Gebhart") is an adult resident and citizen of Charlotte, Mecklenburg County, North Carolina.

2. Upon information and belief, Defendant Cigna Health and Life Insurance Company ("Defendant" or "Cigna") is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Connecticut. Upon information and belief, Cigna is authorized to provide insurance in the State of North Carolina. Upon further information and belief, Cigna is and oversees a family of insurance companies that includes Cigna Behavioral Health, Inc. For the purposes of this Complaint, Cigna and Cigna Behavioral Health, Inc. are jointly referred to as "Defendant" or "Cigna."

3. This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132 (a), (e), (f), and (g), as well as 28 U.S.C. § 1331, as this action involves a federal question and a claim by Plaintiff for employee benefits under employee benefit plans regulated and governed under ERISA.

4. Venue is proper pursuant to the provisions of 29 U.S.C. § 1132(e)(2) as a substantial part of the events that give rise to the claims arose in the Western District, Charlotte Division, and because one or more of the breaches complained of herein occurred in said District and Division.

5. Additionally, this action seeks recovery for Cigna's bad faith denial of Mr. Gebhart's insurance claims in connection with the substance abuse treatment program which provided appropriate, necessary, and likely life-saving treatment for his son.

1

# FACTUAL ALLEGATIONS

## *Davis' History & Treatment at Red Oak Recovery*

6. Over the past several years, Mr. Gebhart's son ("Davis") has struggled with and sought treatment for depression, anxiety, and addiction. Throughout this journey, Mr. Gebhart has supported Davis both emotionally and financially, as a father supports a son.

7. At all times pertinent to the allegations contained herein, Mr. Gebhart was employed by Commercial Credit Group, Inc. As a benefit of his employment, Mr. Gebhart received health insurance coverage through an Open Access Plus Plan, Group Policy No.: 00627384 (the "Plan"). Upon information and belief, Defendant is the Plan administrator.

8. At all times pertinent to the allegations contained herein, Davis was a qualified dependent under the Plan.

9. Davis initially saw a specialist in Charlotte regarding his mental health. His conditions interfered with his ability to keep appointments, and he was forced to find a new doctor.

10. Next, Davis saw a different specialist in Charlotte regarding his mental health. His anxiety and depression overwhelmed him and his battle with addiction worsened.

11. Mr. Gebhart also enrolled Davis in at least two treatment programs in Charlotte, the Hopeway Program, and the McLeod Center. Neither program helped Davis. At the conclusion of both programs, Davis simply went back to his prior pattern of substance abuse.

12. Davis withdrew socially, deteriorated physically, and his resulting vulnerability kept him in the company of friends and acquaintances who encouraged him to continue abusing substances.

13. Mr. Gebhart, distressed that neither prior treatment programs nor specialists could deliver Davis the help he so desperately required, engaged a private security service to monitor the home he shared with his family, including Davis, in an effort to prevent Davis from engaging with those friends who encouraged Davis to abuse substances, and to prevent Davis from acquiring such substances.

14. Unfortunately, even the private security service was insufficient to cut Davis off from the bad influences with which he chose to associate. He continued in his behavior.

15. At the same time, Davis's condition deteriorated such that he was combative and verbally abusive toward his parents. This created a hostile and untenable home situation.

16. Having attempted nearly every local treatment program, Mr. Gebhart decided it was time to instead move Davis away from the bad influences in his environment and find a structured, remote, in-patient treatment center.

17. Red Oak Recovery in Leicester, North Carolina ("Red Oak") was recommended to Mr. Gebhart as an effective mental health and substance use disorder treatment facility.

18. Red Oak was both physically and technologically removed from the bad influences in Davis's life in Charlotte. Not only is Red Oak more than one hundred (100) miles outside of Charlotte, but Red Oak does not permit patients to retain their cell phones, and only permits communication by phone with the express permission of a staff member. Further, Red Oak monitors and restricts patient internet usage, as well as the patients' mail.

19. Functionally, Red Oak patients are removed from the outside world and its stresses and influences so they can focus on recovery.

20. From the beginning, Davis' stay at Red Oak was medically necessary due to his diagnoses: (1) Major Depressive Disorder, recurrent – F33.9; (2) Generalized Anxiety Disorder – F41.1; and (3) Severe Cannabis Use Disorder, in early remission in a controlled environment – F12.21.

21. On or about January 13, 2021, Davis completed one hundred fourteen (114) days of treatment at Red Oak, at which point he moved to a transitional living community in Tucson, Arizona, where he has continued to live a substance-free life because of the treatment he received at Red Oak.

### *Mr. Gebhart's Insurance Claim*

22. As a component of his employment and compensation, Mr. Gebhart and his dependents receive health insurance coverage via the Plan.

23. The Plan covers mental health services. Mental health services are defined in the Plan as "services that are required to treat a disorder that impairs behavior, emotional reaction or thought processes."

24. The Plan also covers substance use disorders. Substance use disorders are defined in the Plan as "a psychological or physical dependence on alcohol or other mind-altering drugs that requires diagnosis, care and treatment."

25. The Plan covers both outpatient and inpatient services for mental health and substance use disorders. Pursuant to the Plan, Residential Treatment Services constitute inpatient treatment.

26. The Plan defines a Mental Health Residential Treatment Center as:

> [A]n institution which: specializes in the treatment of psychological and social disturbances that are a result of mental health conditions; provides a subacute, structured, psychotherapeutic treatment program, under Doctor supervision; provides 24-hour care, in which

3

a person lives in an open setting; and is licensed in accordance with the laws of the appropriate legally authorized agency as a residential treatment center.

27. Upon information and belief, Red Oak qualifies as a Mental Health Residential Treatment Center under the Plan.

28. The Plan defines a Substance Use Disorders Residential Treatment Center as:

[A]n institution which: specializes in the treatment of psychological and social disturbances that are a result of substance use disorders; provides a subacute, structured, psychotherapeutic treatment program, under Doctor supervision; provides 24-hour care, in which a person lives in an open setting; and is licensed in accordance with the laws of the appropriate legally authorized agency as a residential treatment center.

29. Upon information and belief, Red Oak qualifies as a Substance Use Disorders Residential Treatment Center under the Plan.

30. Regarding costs, the Plan provides the following coverage (the middle column is for "in network" and the right column is for "out of network"):

Note: Services where plan deductible applies are noted with a caret (^).

| Mental Health and Substance Use Disorder | | |
|---|---|---|
| Inpatient mental health | Plan pays 80% ^ | Plan pays 60% ^ |
| Outpatient mental health – Physician's Office | $50 copay, and plan pays 100% | Plan pays 60% ^ |
| Outpatient mental health – all other services | Plan pays 80% | Plan pays 60% ^ |
| Inpatient substance use disorder | Plan pays 80% ^ | Plan pays 60% ^ |
| Outpatient substance use disorder – Physician's Office | $50 copay, and plan pays 100% | Plan pays 60% ^ |
| Outpatient substance use disorder – all other services | Plan pays 80% | Plan pays 60% ^ |

Annual Limits:
- Unlimited maximum

Notes:
- Inpatient includes Acute Inpatient and Residential Treatment.
- Outpatient - Physician's Office - may include Individual, family and group therapy, psychotherapy, medication management, etc.
- Outpatient - All Other Services - may include Partial Hospitalization, Intensive Outpatient Services, Applied Behavior Analysis (ABA Therapy), etc.

31. The Plan pays 60% of the cost for out of network inpatient mental health and substance use disorder. Red Oak is out-of-network.

32. Based on Mr. Gebhart's review of coverage for out-of-network inpatient mental health and substance use disorder services, like Red Oak, he reasonably believed that Cigna would pay 60% of the cost of such services.

33. Mr. Gebhart specifically agreed to pay all required costs to Red Oak because he believed, based on Cigna's representations in the Plan regarding coverage for out-of-network mental health and substance use disorder treatment, that Cigna would pay the amount shown in the Summary of Benefits provided by Cigna.

4

34. Upon receipt of invoices from Red Oak, which Mr. Gebhart paid, he submitted a claim to Cigna for reimbursement under the Plan. Mr. Gebhart prepared and submitted the claim with Cigna's assistance.

35. Cigna broke the claim in to five (5) separate claims as follows:

   a. Claim 210626902200 ("Claim x2200"), for services provided between September 23, 2020 and October 23, 2020, in the amount of $23,777.00.

   b. Claim 210644396000 ("Claim x6000") for services provided between October 24, 2020 and November 30, 2020, in the amount of $29,913.00.

   c. Claim 210644396001 ("Claim x6001") for services provided between December 1, 2020 and December 3, 2020, in the amount of $2,301.00.

   d. Claim 210619103100 ("Claim x3100") for services provided between December 4, 2020 and December 31, 2020, in the amount of $21,476.00.

   e. Claim 210619106200 ("Claim x6200") for services provided between January 1, 2021 and January 13, 2021, in the amount of $9,971.00.

36. Claim x2200, Claim x6000, Claim x60001, Claim x3100, and Claim x6200 are collectively referred to as the "Claims."

37. Based on Cigna's representations and his own understanding of the Plan, Mr. Gebhart reasonably believed that Cigna would pay 60% of the amount of the Claims after he paid the required copay.

38. Ultimately, Cigna refused to provide coverage for the Claims at all.

### *Cigna's Various Reasons for Denying the Claims*

39. On or about March 15, 2021, Mr. Gebhart submitted the Claims for reimbursement to Cigna.

40. On April 12, 2021, Cigna informed Mr. Gebhart that it needed additional information and time to process Claim x3100.

41. On May 19, 2021, Mr. Gebhart provided Cigna with the additional information, as well as a letter from Red Oak's medical director stating that Davis's treatment had been "medically necessary" due to the diagnoses of "F33.9 – Major Depressive Disorder, recurrent; F41.1 – Generalized Anxiety Disorder; and F12.21 – Severe Cannabis Use Disorder, in early remission in a controlled environment."

42. On July 16, 2021, per Cigna's authorization summary, Cigna denied coverage for Claim x3100 on the grounds that "[w]ithout sufficient documentation, [Cigna] cannot determine

whether the services were medically necessary to ensure [Davis's] safety or promote additional clinical improvement, or whether any of [Davis's] treatment during the dates under review might or might not have been safely and effectively provided in less restrictive settings."

43. Mr. Gebhart timely responded to Cigna's July 16, 2021 communication and attempted to provide additional information regarding the necessity of Davis's treatment.

44. On August 5, 2021, Cigna reaffirmed to Mr. Gebhart that it denied coverage for all five (5) of the Claims because "requested medical records were not received."

45. When Mr. Gebhart received the August 5, 2021 communication – which wasn't until early September – he again timely responded and attempted to provide additional information regarding the necessity of Davis's treatment, as well as gain some insight into what it was that Cigna was missing that prompted it to deny the Claims, given that Mr. Gebhart did not receive any specific direction regarding what Cigna required.

46. Additionally, Mr. Gebhart sought clarification as to the "Explanation of benefits" for the Claims, many of which reflect that Cigna negotiated a discount with the facility and Mr. Gebhart had received a discount.

47. Mr. Gebhart's confusion arose out of the "discount" reflected on the "Explanation of benefits" – which state that Mr. Gebhart did not owe anything for Claim x2200, Claim x6000, or Claim x6001 – because Mr. Gebhart had already paid the full amounts owed for Claim x2200, Claim x6000, and Claim x6001 to Red Oak directly, but received no reimbursement from Cigna.

48. Second, on December 21, 2021, Cigna denied coverage for the Claims on the grounds that "[b]ased upon current available information, coverage for the requested service cannot be approved because there is insufficient scientific evidence to demonstrate the safety and/or effectiveness of Wilderness Therapy Programs/outdoor youth programs." Cigna further defined this type of treatment as "experimental/investigational/unproven" – a treatment category that the Plan does not cover.

49. Mr. Gebhart timely responded to the December 21, 2021 communication and thoroughly explained that although Red Oak utilizes certain outdoor experiences in its program, such experiences are not the centerpiece of the program. Mr. Gebhart further explained that Red Oak is a mental health facility licensed by the North Carolina Department of Health and Human Services, Division of Health Service Regulation, and that Red Oak has relationships with other insurance companies including Aetna, First Health, and Blue Cross Blue Shield.

50. Third, on February 24, 2022, Cigna denied coverage for the Claims (not including Claim x3100) via a "CORRECTED LETTER: RATIONALE OF CORRECT LEVEL OF CARE." This time, Cigna's denial was based on its conclusion that medical necessity was not met for admission and continued stay at ASAM Level 2.5: Partial Hospitalization Services. According to Cigna, less restrictive levels of care were available for safe and effective treatment.

51. Mr. Gebhart timely responded to the February 24, 2022 communication and explained Davis's history with other, less restrictive, treatment options – none of which was successful. Mr. Gebhart further explained his understanding of the ASAM criteria cited in Cigna's denial, and Davis's condition upon admission to Red Oak.

52. Additionally, Mr. Gebhart provided Cigna with a letter from Dr. Brady Schroer, Medical Director at Red Oak, which states that Davis's time at Red Oak was medically necessary.

53. In addition to the written correspondence, throughout 2021 and early 2022, Mr. Gebhart exchanged email communications with Cigna in an attempt to understand exactly why Cigna denied the Claims, and/or what it required in order to process the Claims.

54. Mr. Gebhart also appealed Cigna's decision to deny coverage for the Claims (Level 2.5 Partial Hospitalization Services from 9/23/2020 – 1/13/2021).

55. On March 1, 2022, in response to Mr. Gebhart's appeal, Cigna stated only that its original decision to deny coverage is upheld and provided conclusory reassurance to Mr. Gebhart: "Please know that a Physician Board Certified in Psychiatry also reviewed your information and agrees with this decision."

56. After more than one (1) year of communications between Mr. Gebhart and Cigna, and the various reasons provided for Cigna's denial of the Claims, Mr. Gebhart is left with more questions than answers, and has not received any reimbursement from Cigna despite the representations in the Plan.

57. Mr. Gebhart agreed to pay for Davis's treatment at Red Oak – treatment that was medically necessary after exhausting all other reasonable treatment options – based on Cigna's representations in the Plan that it provided coverage for out-of-network mental health and substance use disorder treatment.

58. Cigna denied the Claims in bad faith, based on one or more of the above-referenced reasons for denial, in conflict with the plain language of the Plan.

59. Cigna failed and refused to reimburse Mr. Gebhart for the Claims despite Mr. Gebhart's repeated requests.

60. Cigna's failure and refusal to reimburse Mr. Gebhart is a material breach of the Plan. Mr. Gebhart has been directly and proximately damaged as a result of Cigna's material breach of the Plan.

61. Cigna has no reasonable basis for denying coverage due under the Plan, and its refusal to reimburse Mr. Gebhart is unreasonable and carried out in bad faith.

## FIRST CLAIM FOR RELIEF
### (29 U.S.C. § 1132 – Civil Enforcement of Employee Retirement Income Security Program)

62. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

63. Pursuant to 29 U.S.C. § 1132(a)(B), a participant or beneficiary is empowered to bring a civil enforcement action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

64. The Plan is an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1).

65. Mr. Gebhart is a "participant" as defined in 29 U.S.C. § 1002(7).

66. Cigna wrongfully denied benefits to Mr. Gebhart in violation of the Plan provisions and in violation of 29 U.S.C. § 1132 in at least the following particulars:

   a. Mr. Gebhart has been wrongfully denied coverage for the Claims, to the extent provided under the Plan; and

   b. Cigna violated its contractual obligation to furnish coverage to Mr. Gebhart for the Claims, to the extent provided under the Plan.

67. As a direct and proximate result of Defendant's violation of 29 U.S.C. § 1132, Plaintiff has been damaged in an amount believed to be at least $87,438.00, plus interest.

68. As a result of Defendant's violation of 29 U.S.C. § 1132, Plaintiff is entitled to recover his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

69. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

70. Plaintiff contends that Cigna has breached its contractual obligations under the Policy by failing and refusing to reimburse Mr. Gebhart pursuant to the Plan.

71. There exists a real and justiciable controversy between the parties as to whether Cigna has breached the Plan.

72. Pursuant to Rule 57 of the North Carolina Rules of Civil Procedure and the North Carolina Declaratory Judgment Act (N.C. Gen. Stat. § 1-253, *et seq.*), Plaintiff seeks a declaration that the Plan applies under the facts of this case, Plaintiff is entitled to coverage for the Claims,

and Plaintiff is now entitled to reimbursement for the Claims to the greatest extent provided under the Plan.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

73. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

74. The Plan is a valid and enforceable contract supported by valid and adequate consideration between the parties.

75. Plaintiff has fully performed all of his obligations under the Plan.

76. Defendant materially breached the Plan by failing to provide coverage for the Claims and refusing to reimburse Plaintiff for the costs incurred.

77. As a direct and proximate result of Defendant's material breach of contract, Plaintiff has been damaged in amount to be determined at trial, which is believed to be at least $87,438.00, plus interest.

## FOURTH CLAIM FOR RELIEF
### (Unfair Trade Practices – N.C. Gen. Stat. § 75-1.1 *et seq.*)

78. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

79. As set forth above, Defendant intentionally and wrongfully denied Plaintiff's Claims under the Plan even though Defendant knew that Plaintiff's Claims for such coverage rightfully fell within the scope and plain language of the Plan, and that Plaintiff was rightfully entitled to such coverage by virtue of participating in the Plan.

80. Defendant's conduct constitutes a violation of N.C. Gen. Stat. §§ 58-63-10 and 58-63-15(11)(b), (d), (g), and (n). These statutes are an important part of North Carolina's regulatory scheme governing the insurance business in this State.

81. Defendant's actions were in bad faith and constitute substantial aggravating factors to its material breach of the Policy.

82. Defendant's actions were in and affecting commerce.

83. Defendant's actions were unfair and deceptive within the meaning of the Unfair Trade Practice Statute, N.C. Gen. Stat. § 75-1.1, *et seq*.

84. As a direct and proximate result of Defendant's unfair trade practices, Plaintiff has been damaged in the amount believed to be at least $87,438.00, plus interest.

85. As a result of Defendant's conduct, Plaintiff is entitled to recover his actual, consequential, and incidental damages, plus treble damages pursuant to N.C. Gen. Stat. § 75-16, as well as his reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## FIFTH CLAIM FOR RELIEF
**(Insurance Bad Faith)**

86. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

87. The Plan is a valid and enforceable contract between the parties.

88. Plaintiff has fully performed all of his obligations under the Plan.

89. Defendant has refused to provide Plaintiff the benefits due under the Plan, namely by failing and refusing to reimburse Plaintiff for the Claims, to the extent provided under the Plan.

90. Defendant's refusal to provide Plaintiff the benefits due under the Plan results from Defendant's bad faith and unreasonable action in breach of the implied covenant of good faith and fair dealing arising in the Plan.

91. As a direct and proximate result of Defendant's bad faith refusal to reimburse Plaintiff for the Claims, to the extent provided under the Plan, Plaintiff has been damaged in an amount believed to be at least $87,438.00, plus interest.

92. As a direct and proximate result of Defendant's bad faith conduct, Defendant should be required to pay Plaintiff not only the $87,438.00, but also punitive damages pursuant to N.C. Gen. Stat. § 1D-1, *et seq.*, for Defendant's willful, wanton, intentional, and malicious conduct.

**WHEREFORE**, Plaintiff prays the Court:

1. Enter a declaratory judgment that the Plan applies under the facts of this case, that Plaintiff is entitled to coverage for the Claims to the extent provided under the Plan, and Plaintiff is now entitled to reimbursement to the greatest extent permitted under the Plan.

2. Enter a judgment against Defendant in the amount of at least $87,438.00 for Defendants violation of 29 U.S.C. § 1132, plus interest.

3. Enter judgment against Defendant in the amount of at least $87,438.00 for Defendant's breach of contract, plus interest;

4. Enter judgment against Defendant in the amount of at least $87,438.00 for Defendant's unfair and deceptive trade practices, plus interest;

5. Enter judgment against Defendant in the amount of at least $87,438.00 for Defendant's bad faith insurance practices, plus interest;

6. Award Plaintiff his reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1, 29 U.S.C. § 1132(g)(1), and all other applicable federal and state law;

7. Award Plaintiff treble damages pursuant to N.C. Gen. Stat. § 75-16;

8. Award Plaintiff punitive damages pursuant to N.C. Gen. Stat. § 1D-1, *et seq.;*

9. Tax the costs of this action against Defendants;

10. For a trial by jury on all issues so triable; and

11. For all such other and further relief that the Court deems just and equitable.

This the 25th day of October, 2022.

**JAMES, McELROY & DIEHL, P.A.**

/s/Edward T. Hinson, Jr.
Edward T. Hinson, Jr. (NC Bar No. 07795)
Richard B. Fennell (NC Bar No. 17398)
Alexandra B. Bachman (NC Bar No. 54746)
525 N. Tryon Street, Suite 700
Charlotte, NC 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
Email: ehinson@jmdlaw.com
    rfennell@jmdlaw.com
    abachman@jmdlaw.com
*Attorneys for Plaintiff*